# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MIRIAM DRAIMAN,** </br>  Plaintiff, </br> v. </br> **NANCY A. BERRYHILL**, **Acting Commissioner of Social Security,** </br>  Defendant. | **NO. CV 17-747-KS** </br></br> **MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

MIRIAM DRAIMAN ("Plaintiff") filed a Complaint on January 30, 2017, seeking review of the denial of her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 4, 14, 21.) On October 10, 2017, the parties filed a Joint Stipulation. (Dkt. No. 20 ("Joint Stip.")) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 33-34.) The Commissioner requests that

the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*Id.* at 35-37.) The Court has taken the matter under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On March 4, 2013, Plaintiff, who was born on June 2, 1952[1], protectively filed an application for a period of disability and DIB. (Administrative Record ("AR") 12, 162-64.) Plaintiff alleged disability commencing on February 23, 2013 due to a back injury, high blood pressure, diabetes, a heart stent, allergies, and stress. (AR 86.) Plaintiff previously worked as an administrative assistant, a home health aide, and a recreation aide. (AR 20.) After the Commissioner denied Plaintiff's applications initially (AR 86-98) and on reconsideration (AR 100-04), Plaintiff requested a hearing (AR 109-10). At a hearing held on September 1, 2015, at which Plaintiff appeared with counsel, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff and a vocational expert. (AR 27-41.) On September 21, 2015, the ALJ issued an unfavorable decision denying Plaintiff's application for a period of disability and DIB. (AR 12-21.) On December 1, 2016, the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her February 23, 2013 alleged onset date and that Plaintiff had the following severe impairment: degenerative disc disease. (AR 14.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in the Commissioner's Listing of Impairments. (AR 16.)

---

[1] At 61 years of age on the alleged commencement date for disability, Plaintiff would be classified as a "person of advanced age" for purposes of the disability decision. *See* 20 C.F.R. § 404.1563 (e). Neither party presented any argument concerning the impact, if any, of Plaintiff's age on the ALJ's adverse decision.

2

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with a further limitation to "work that does not require climbing ladders, ropes, and scaffolds and requires no more than occasional stooping, crouching, or crawling." (AR 17.) The ALJ found that Plaintiff was capable of performing her past relevant work as an administrative assistant. (AR 20.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 21.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges the following three errors: (1) The ALJ improperly applied Acquiescence Ruling 97-4(9) in finding a presumption of continuing nondisability; (2) The ALJ failed to properly evaluate evidence of Plaintiff's physical and mental impairments; and (3) the ALJ failed to properly evaluate the credibility of Plaintiff's subjective complaints. (Joint Stip. at 7.) In addition, as a threshold issue, Plaintiff contends that the ALJ misstated the record in various respects. (*Id*. at 2-6.)

### I.  **Misstatement of the Record**

#### A.  **Applicable Law**

An ALJ's misstatement of the record is legal error. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998). However, "harmless error applies in the Social Security context." *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Id*. at 1055. An ALJ's

misstatement of the record, for example, is harmless error if it did not materially impact the ALJ's decision. *See Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that an ALJ's misstatement of the record about the claimant's daily activity of television watching was harmless error because the ALJ's adverse credibility determination otherwise was supported by substantial evidence).

**B. Analysis**

As an initial matter, Plaintiff has made a number of statements questioning the integrity of the ALJ's fact-finding process. According to Plaintiff, the ALJ made findings that were "disingenuous at best" (Joint Stip at 8-9), appeared to make a "blatant misapplication of the law to support denying the claim" (*id.* at 9), "intentionally ignore[d]" evidence (*id.* at 13), and "attempt[ed] to justify his decision" by selectively citing isolated pieces of evidence (*id.* at 25). The Court rejects all of these implications. ALJs in Social Security cases are entitled to a presumption that they are unbiased. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1215 (9th Cir. 2005). Petitioner has proffered no evidence to rebut this presumption. Even if, as Plaintiff alleges, the ALJ misstated the record in some respects, it is entirely speculative to attribute these errors to bad faith.

Plaintiff raises three arguments that can be construed solely as allegations of misstatements of the record.[2] First, Plaintiff alleges that the ALJ misattributed a statement to Plaintiff's treating physician, Dr. Edwin Haronian, about Plaintiff's back condition. (Joint Stip at 3.) The ALJ attributed to Dr. Haronian a statement that Plaintiff's back condition had evolved into a "7% whole person impairment," which would have represented an

---

[2] Although Plaintiff raises additional allegations in the section of her brief dedicated to the accuracy of the ALJ's summary of the evidence, these additional allegations (regarding the opinion of the state agency physician and the severity of her mental impairments) are duplicative of arguments she makes as part of her three substantive claims of error and are addressed fully with those claims.

5

improvement from Plaintiff's previous condition of "15% percent whole person impairment." (AR 20.) In fact, it was not Dr. Haronian, but another physician, Dr. Chung, who had assessed the 7% whole person impairment. (AR 761.) Plaintiff therefore is correct that the ALJ misattributed the statement to Dr. Haronian.

The misattribution, however, was harmless error. The statement about Plaintiff's 7% whole person impairment in June 2013 was not a factor in the ALJ's non-disability determination. Specifically, it was not a factor in the ALJ's evaluation of Dr. Haronian's opinion, the residual functional capacity determination, or the adverse credibility determination. The ALJ noted in passing that the difference between the June 2013 assessment and that of February 2013 "suggest[s] that the [Plaintiff's] condition improved" but he emphasized that the assessments were made in the worker's compensation context and "a worker's compensation disability ranking is not equivalent to disability in the Social Security Act and regulations" and was not binding on the Commissioner. (AR 20.) Thus, while the ALJ appears to have been less than careful in citing to the record evidence, the misattribution of the statement to Dr. Haronian was inconsequential to the non-disability determination and, therefore, does not warrant reversal of that determination.

Second, Plaintiff alleges that the ALJ mischaracterized a July 2013 opinion by Dr. Haronian as "vague" and failing to "provide a function-by-function analysis." (AR 20; Joint Stip at 3.) In fact, Dr. Haronian did provide a brief function-by-function analysis in the narrative section of his July 2013 opinion, although it was not clearly identified as such. (AR 766.) Dr. Haronian stated: Plaintiff "will be on modified work duties such as avoid pushing, pulling and lifting more than 10 pounds, avoid bending and twisting completely. If modified work is not available, the patient will be on [temporary total disability]." (*Id.*) Although Plaintiff is correct that the ALJ did not explicitly acknowledge this statement by Dr. Haronian of Plaintiff's functional limitations, any error in failing to do so was harmless. As discussed in detail below, the ALJ's ultimate determination of non-disability was

6

consistent with Dr. Haronian's statement from the July 2013 opinion; thus, the ALJ's failure to explicitly reference this statement does not require reversal. Even if the omission was in error, the agency's decision making path can be reasonably discerned. *See Brown-Hunter v. Colvin*, 806 F.3d at 492.

Third, Plaintiff argues that the ALJ mischaracterized the time period with regard to evidence demonstrating Plaintiff's positive reaction to treatment for her back. (Joint Stip at 4-5.) Plaintiff received the treatment in between two work-related back injuries: the first incident occurred in March 2011, and the second incident occurred in May 2012. (AR 285.) The ALJ however, described the treatment as occurring *after* the second incident in May 2012, and commented that it was evidence of Plaintiff's failure to return to work "despite showing significant improvement with treatment." (AR 18.) As Plaintiff points out, the specific treatment cited by the ALJ — physical therapy, injections, and an epidural block — *preceded* the May 2012 incident and therefore was not particularly probative of Plaintiff's failure to return to work after that incident. (Joint Stip at 5; AR 298, 304, 315.)

This mischaracterization of the record also constitutes harmless error. The evidence of Plaintiff's positive reaction to treatment prior to her second back injury in May 2012 was chronologically remote in relation to her alleged disability onset date of February 23, 2013. Thus, this evidence had little relevance. *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."); *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.1 (9th Cir. 1998) (concluding that an ALJ could properly reject medical evidence that predated the relevant time period). Moreover, this particular evidence was not a factor in the ALJ's sequential evaluation process for the period beginning on February 23, 2013.

Accordingly, the ALJ's apparent misinterpretation of this evidence was inconsequential to the non-disability determination and does not warrant reversal.

7

## II. <u>Acquiescence Ruling 97-4(9)</u>

### A. Applicable Law

"The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). "Normally, an ALJ's findings that a claimant is not disabled create [sic] a presumption that the claimant continued to be able to work after that date." *Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009). "The presumption does not apply, however, if there are 'changed circumstances.'" *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1994) (citation omitted); SSR 97-4(9). Examples of changed circumstances include "[a]n increase in the severity of the claimant's impairment," "a change in the claimant's age category," and a new issue raised by the claimant, "such as the existence of an impairment not considered in the previous application." *Lester*, 81 F.3d at 827-28 (citations omitted); see also SSR 97-4(9).

In *Chavez v. Bowen*, the Ninth Circuit addressed how res judicata applies when a previously denied disability claimant makes a subsequent application for benefits with evidence of changed circumstances. *Chavez v. Bowen*, 844, F.2d 691, 694 (9th Cir. 1988). The court noted that while res judicata made binding the first judge's determinations of the claimant's RFC, the claimant's attainment of a different age category status "became legally relevant and should have been considered." *Id*. The second ALJ must "determine whether [the claimant's] current circumstances [are] different from those found by the first ALJ." *Johnson v. Astrue*, 358 F. App'x 791, 792 (9th Cir. 2009). A second ALJ may properly apply res judicata when a claimant "has not established changed circumstance sufficient to overcome the presumption of continuing nondisability." *Kilian v. Barnhart*, 226 Fed. Appx. 666, 668 (9th Cir. 2007); *see also Chavez*, 844 F.2d at 694 (even where a change in age status occurred and could be outcome-determinative, finding "[t]he first administrative law

8

judge's findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings.") Thus, to overcome the presumption, a claimant must present "new and material evidence to the second judge" to support her claim. *Chavez*, 844 F.2d at 694.

When a claimant overcomes the presumption of continuing non-disability, however, a prior ALJ's individual findings are still entitled to some res judicata consideration absent new information not presented to the earlier adjudicator. *See* SSR 97-4(9) (if the claimant rebuts the presumption, adjudicators must give effect to certain findings contained in the final decision by an ALJ or the Appeals Council on the prior claim): *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (discussing holding in *Chavez* that "a previous ALJ's findings concerning residual functional capacity, education, and work experience are entitled to some res judicata consideration and such findings cannot be reconsidered by a subsequent judge absent new information not presented to the first judge") (citing *Chavez*, 844 F.2d at 694).

**B.     Analysis**

Plaintiff previously filed an application for a period of disability and DIB that was denied by an ALJ in a decision that became final on February 22, 2013. (AR 17, 72-81.) Plaintiff's instant DIB application alleges a disability onset date one day later, on February 23, 2013. (AR 86.) In the instant decision, the ALJ found that a presumption of continuing nondisability applied and that Plaintiff had not rebutted the presumption by showing a changed circumstance material to the determination of disability. (AR 17.) In particular, the ALJ reasoned that Plaintiff proffered "much of the same evidence" for both of her disability applications. (*Id.*)

//

//

Plaintiff's sole allegation of changed circumstances is that the ALJ in the most recent decision reached a more restrictive residual functional capacity determination than did the ALJ in the previous decision. (Joint Stip at 8.) In the earlier decision, an ALJ found Plaintiff capable of sedentary work, which was defined as not lifting/carrying in excess of 10 pounds; not standing and/or walking in excess of 2 hours total per 8-hour workday; not sitting in excess of 6 hours total per 8-hour workday; no climbing of ladders, ropes, and/or scaffolds; and no more than occasional postural movements. (AR 77.) In the instant decision, the ALJ also found Plaintiff capable of sedentary work, but with a limitation to "work that does not require climbing ladders, ropes, and scaffolds and requires no more than occasional stooping, crouching, or crawling." (AR 17.) According to Plaintiff, the ALJ's own departure from the previous ALJ in this regard denotes a changed circumstance that rebuts the presumption of continuing nondisability. (*Id*.)

Plaintiff's allegation of a changed circumstance is based on an apparent misreading of the prior ALJ's decision. According to Plaintiff, the prior ALJ assigned a residual functional capacity for light work (Joint Stip at 8), but in fact the prior ALJ found Plaintiff capable of *sedentary work* (*see* AR 77), as did the instant ALJ (*see* AR 17). The two residual functional capacity determinations are materially the same. But even if they were materially different, it would not rebut the presumption of continuing nondisability. Even where, as in this case, an ALJ finds no changed circumstances, "the *Chavez* presumption does not prohibit a subsequent ALJ from considering new medical information and revising Appellant's RFC based on recent medical evaluations and results." *Alekseyevets v. Colvin*, 524 F. App'x 341, 344 (9th Cir. 2013) (citing *Stubbs-Danielson v. Astrue*, 539, F.3d 1169, 1173 (9th Cir. 2008)). Accordingly, any minor difference in the latest RFC determination did not rise to the level of legal error under the *Chavez* doctrine.

//
//
//

### III. Medical Evidence of Physical and Mental Impairments

Plaintiff alleges that the ALJ ignored evidence demonstrating the seriousness of her back problem, specifically, the opinion of her treating physician. Plaintiff also alleges that the ALJ erred in finding that she did not have a "severe" mental impairment.

#### A. Physical Impairments

The opinion of a treating source is generally entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also* 20 C.F.R. § 404.1527(c)(2). To reject an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). If, however, the treating physician's opinion is contradicted by another medical source, the ALJ must consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to accord it. These factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, the "[n]ature and extent of the treatment relationship" between the patient and the treating physician, the "[s]upportability" of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole. Ultimately, the ALJ must articulate "specific and legitimate reasons that are supported by substantial evidence" to reject the contradicted opinions of a treating physician. *Ghanim*, 763 F.3d at 1161.

Although the basis of Plaintiff's claim about her physical impairments is not entirely clear (Joint Stip at 13), it appears that Plaintiff is claiming that the ALJ improperly

disregarded the opinion of Dr. Haronian, Plaintiff's treating physician, in favor of the opinion of Dr. Carolina Bacani-Longa, a non-examining state agency physician. (Joint Stip at 5-6, 13.) In July 2013, Dr. Haronian stated, as noted above, that because of Plaintiff's back condition, she "will be on modified work duties such as avoid pushing, pulling and lifting more than 10 pounds, avoid bending and twisting completely." (AR 766.) In comparison, in October 2013, Dr. Bacani-Longa similarly stated that due to Plaintiff's degenerative disc disease and related conditions, Plaintiff should be limited to the equivalent of sedentary work: lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently, standing and/or walking for 2 hours, and sitting for a total of 6 hours. (AR 93-95.) The one area where the two physicians clearly differed was in the function of bending: Dr. Haronian precluded all bending (AR 766), while Dr. Bacani-Longa recommended occasional bending at the waist and knees (AR 96). The ALJ assigned "great weight" to Dr. Bacani-Longa's opinion. (AR 20.)

"The opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Here, the opinion of Dr. Bacani-Longa was consistent with other evidence in the record that the ALJ expressly considered. (AR 19.) According to that evidence, Plaintiff experienced at least temporary relief from treatments such as Flector patches (AR 755), Butrans patches (AR 772), Voltaren gel (AR 776, 796), and medications such as Flexeril and Celebrix (*id.*). Although Plaintiff remained symptomatic, her back condition and treatment generally remained the same. (AR 790, 793.) At one point, she discontinued physical therapy and other modes of treatment. (AR 774.) Imaging of Plaintiff's back was consistent with previous imaging. (AR 291, 326-28, 785-86, 804.) And no physician who examined Plaintiff concluded that her back condition rendered her totally and permanently disabled. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (holding that an ALJ properly assessed a claimant's back impairment where none of the doctors who examined him

expressed the opinion that he was totally disabled). In light of this consistent medical evidence, Dr. Bacani-Longa's opinion could constitute substantial evidence, and it therefore was not improper for the ALJ to assign great weight to her opinion.

In any event, any error by the ALJ in crediting the opinion of the non-examining physician over that of the treating physician was harmless as to the one area in which the two physicians clearly differed. Although Dr. Haronian and Dr. Bacani-Longa clearly differed as to Plaintiff's ability to bend, the job cited by the ALJ at step four, administrative assistant, does not require any bending. *See* DOT 169.167-010 (stating that the job of administrative assistant is a sedentary job that does not require stooping, kneeling, crouching, or crawling). Thus, the only material difference between Dr. Haronian's and Dr. Bacani-Longa's opinions was inconsequential to the ALJ's ultimate non-disability determination.

Finally, Plaintiff repeatedly argues that, as a general matter, the ALJ's decision to assign great weight to Dr. Bacani-Longa's opinion and to find general improvement in Plaintiff's physical condition is contrary to the weight of the medical evidence, which demonstrates deterioration rather than improvement. (Joint Stip at 3-5, 13, 22-23.) But a claimant's argument about what the medical evidence generally shows, by itself, is insufficient to demonstrate that an ALJ's decision is based on legal error or lacks the support of substantial evidence. Rather, a claimant must demonstrate that the medical evidence contains specific functional limitations that the ALJ improperly disregarded. *See Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 601 (9th Cir. 1999) (holding that an ALJ was not required to credit medical evidence that did not show how a claimant's symptoms "translate into specific functional deficits which preclude work activity"). Plaintiff has not demonstrated that any specific functional limitations, particularly any limitations actually recommended by Dr. Haronian or any other treating physician, would have made a material difference to the ALJ's evaluation of her ability to work despite her back condition.

13

Accordingly, reversal is not warranted based on the ALJ's evaluation of Plaintiff's physical impairments.

**B. Mental impairments**

Step two of the Commissioner's sequential evaluation process requires the ALJ to determine whether an impairment is severe or not severe. *See* 20 C.F.R. § 404.1520(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the Commissioner's regulations, an impairment is not severe if it does not "significantly limit[ the claimant's] physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a). For mental impairments, examples of basic work activities are the ability to understand, carry out, and remember simple instructions; the use of judgment; the ability to respond appropriately to supervision, coworkers, and usual work situations; and the ability to deal with changes in a routine work setting. SSR 85-28, 1985 WL 56856, at *3. The Ninth Circuit has described step two as "a de minimis screening device to dispose of groundless claims." *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ determined that, although Plaintiff had medically determinable impairments of depression and anxiety, she did not have a "severe" mental impairment because her mental impairments did not cause more than a minimal limitation in her ability to perform basic mental work. (AR 15.) The ALJ's non-severity determination was based on the opinion of an examining psychiatrist, who had concluded that Plaintiff had no mental diagnosis, no functional limitations, and a Global Assessment of Functioning ("GAF") Score of 60. (AR 778-83.) A GAF Score of 60 signifies "moderate symptoms" or any moderate difficulty in social, occupational, or school functioning. *See Garrison v. Colvin*, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

Plaintiff alleges that the ALJ's non-severity determination was erroneous in light of a treatment note from February 2013. (Joint Stip at 6-7, 13.) In that note, a treating physician diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, Moderate" and "Generalized Anxiety Disorder"; the physician also assigned a GAF Score of 55. (AR 543.) A GAF Score of 55 also signifies "moderate symptoms" or any moderate difficulty in social, occupational, or school functioning. *See Garrison*, 759 F.3d at 1003 n.4.

This evidence did not render the ALJ's non-severity determination erroneous. First, Plaintiff's diagnoses of Major Depressive Disorder and Generalized Anxiety Disorder are insufficient to demonstrate that she has a severe mental impairment. A diagnosis does not demonstrate severity at step two. *See Carmickle*, 533 F.3d at 1164-65 (holding that at step two, an ALJ did not err in failing to classify carpal tunnel syndrome as a severe impairment where the medical record did not establish work-related limitations); *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although appellant clearly does suffer from diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.'"); *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (noting that at step two, a claimant "must show more than the mere presence of a condition or ailment") (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)). Moreover, while Plaintiff testified about her inability to maintain focus and concentration, she acknowledged that she was not getting any treatment for mental health issues. ( AR 34.)

Second, Plaintiff's GAF scores of 55 and 60 are also insufficient to demonstrate severity. As a general matter, GAF scores have limited probative value at step two. *See McFarland v. Astrue*, 288 F. App'x 357, 359 (9th Cir. 2008) ("The Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorder listings.'") (quoting 65 Fed. Reg. 50746, 50765 (Aug. 21, 2000). And in this case, although the ALJ assigned some weight to Plaintiff's GAF scores (AR 16), the scores were not sufficiently low to call into question the

ALJ's ultimate non-severity determination. *See Craig v. Colvin*, 659 F. App'x 381, 382 (9th Cir. 2016) (ALJ did not err in finding that the claimant did not have a severe mental impairment despite consistent GAF scores of 55). Accordingly, reversal is not warranted based on the ALJ's step two determination that Plaintiff's mental impairments were non-severe.

### IV. Plaintiff's Credibility

#### A. Applicable Law

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle*, 533 F.3d at 1161 (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

In weighing a plaintiff's credibility, the ALJ may consider a number of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's

16

daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

**B. Analysis**

At the most recent administrative hearing, Plaintiff testified about the limitations arising from her physical and mental impairments. (AR 30-37.) She testified that after her prior DIB application had been denied, her conditions worsened. (AR 30-31.) At one point during the hearing, she stood up from her seat in order to change positions. (AR 32-33, 35.) Her worst problem, she said, was her severe back pain. (AR 33.) Although she was taking no medication for any mental impairment, her medications for her back pain included pain relief patches and oral medications such as Celbrex. (AR 34.) The medications made her tired and disoriented. (AR 34-35.) She had troubles with concentration and focus. (AR 35.) She had to change positions after five minutes whether sitting, standing or lying down, and she woke up throughout the night due to pain. (AR 35-36.) She testified that she could walk for two to three blocks, and she was afraid of driving because of sudden pain in her leg. (AR 36-37.) She said that her hands were numb and stiff, causing her to drop things and to have trouble holding a phone. (AR 37.)

In finding Plaintiff "not entirely credible," the ALJ articulated three reasons.[3] (AR 19.) First, the ALJ found that Plaintiff's "treatment has been effective in controlling

---

[3] Because Plaintiff's brief in the district court does not explicitly challenge all of the reasons articulated by the ALJ in his adverse credibility determination, the Commissioner contends that the Plaintiff has waived any arguments as to the unchallenged reasons. (Joint Stip at 30-31.) The Court

17

[Plaintiff's] symptoms" because she "admitted to significant benefit from prescription medications, including patches," her "medication regiment has been consistent," and there had been "no change in medical observations of [Plaintiff]." (*Id.*) The ALJ also noted that Plaintiff declined opioid medications and later reported that the Butrans patches "were more effective" in managing her pain. (*Id.*) This reason was supported by substantial evidence of Plaintiff's treatment for her back condition, as discussed above. (AR 755, 772, 776, 790, 793, 796.) Although some of the evidence also demonstrated that Plaintiff continued to complain of back pain despite treatment (AR 755, 790, 793), the ALJ's interpretation of the treatment evidence on the whole, as demonstrating significant benefit, was a rational interpretation that must be upheld. *See Burch*, 400 F.3d at 679. Thus, this was a clear and convincing reason for the ALJ to discount Plaintiff's credibility. *See Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."); *see also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (an ALJ may consider whether treatment produced a fair response or control of pain that was satisfactory).

Second, the ALJ found that Plaintiff's allegations were "inconsistent with the objective medical evidence," because the record showed that her back condition either was "most likely better now (with better symptom control)" or was "essentially the same" as during the prior DIB period. (AR 19.) This reason also was supported by substantial evidence in the record, including the imaging evidence discussed above. (AR 291, 326-28, 785-86, 790,

---

rejects this contention and declines to find a waiver of any argument as a part of Plaintiff's overall claim challenging the ALJ's adverse credibility determination, because the overall claim itself was properly presented. *See Farley v. Colvin*, 231 F. Supp. 3d 335, 341 (N.D. Cal. 2017) (rejecting the Commissioner's argument that a Social Security claimant waived an issue by failing to develop it in his briefing at the district court); *see also United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) ("As the Supreme Court has made clear, it is claims that are deemed waived or forfeited, not arguments.") (citing *Lebron v. Nat'l Railroad Passenger Corp.*, 513 U.S. 374 (1995)).

796, 804.) Thus, this too was a clear and convincing reason for the ALJ to discount Plaintiff's credibility. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *see also Morgan*, 169 F.3d at 599 ("The ALJ pointed to specific evidence in the record . . . in identifying what testimony was not credible and what evidence undermined Morgan's complaints").

Third, the ALJ found that Plaintiff stopped working for reasons that were apparently unrelated to her medical impairments: Although she injured her back in 2011 and 2012 (resulting in her most serious impairment), Plaintiff began working below the level of substantial gainful activity in 2008, did not work at all in 2009 or 2010, and continued to work below the level of substantial gainful activity in 2011 and the first half of 2012. (AR 19, 168, 170-71.) An ALJ may properly discount a claimant's credibility when she stops working for reasons that are apparently unrelated to an alleged disability or when she has an inconsistent employment record. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (holding that the ALJ properly discounted claimant's credibility after finding that claimant stopped working not because of disability, but because he had been laid off); *see also Thomas*, 278 F.3d at 959 (holding that an ALJ could consider a claimant's "spotty" work history as negatively affecting her credibility regarding her inability to work). Thus, this was a clear and convincing reason for the ALJ to discount Plaintiff's credibility.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

19

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: February 13, 2018

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE